**BLOCK 25 COMMITTEE,
et al., Respondents,**

v.

**CITY OF WALKER, Appellant.**

No. A04–833.

Court of Appeals of Minnesota.

Jan. 4, 2005.

Thomas L. Fabel, Lindquist & Vennum, P.L.L.P., Minneapolis, MN, for respondents.

Jon K. Iverson, Paul D. Reuvers, Iverson Reuvers, L.L.C., Bloomington, MN, for appellant.

Considered and decided by KLAPHAKE, Presiding Judge; STONEBURNER, Judge; and HUSPENI, Judge.*

## OPINION

STONEBURNER, Judge.

The district court granted a declaratory judgment and injunction to respondents, prohibiting the relocation of appellant City of Walker's municipal liquor store to a historic building located within 1,000 feet of the Cass County jail, concluding that Minn.Stat. § 340A.702(6) (2002), makes the sale of liquor from that location illegal. Because we construe the statute to apply only to state institutions and not to county jails, we reverse.

### FACTS

Respondents, an organization of Walker-area citizens and several of its individual members, sought a declaratory judgment from the district court that Minn.Stat. § 340A.702(6) (2002), criminalizes liquor sales within 1,000 feet of a county jail and an injunction prohibiting appellant City of Walker from expending taxpayer funds to move its municipal liquor store to a historic building located within 1,000 feet of the Cass County jail. The district court grant-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

ed summary judgment to respondents, finding that Minn.Stat. § 340A.702(6), applies to the Cass County jail, and therefore prohibits the use of the proposed relocation site as a liquor store and the expenditure of taxpayers' funds for the relocation. This appeal followed.

## ISSUES

Does Minn.Stat. § 340A.702(6) (2002), criminalize liquor sales within 1,000 feet of a county jail?

## ANALYSIS

"On appeal from a summary judgment based on the application of statutory language to undisputed facts, we exercise independent review to determine whether the district court erred in applying the statute." *Occhino v. Grover,* 640 N.W.2d 357, 359 (Minn.App.2002). "The fundamental rule of statutory construction is to look first to the specific statutory language and be guided by its natural and most obvious meaning." *State v. Nelson,* 671 N.W.2d 586, 589 (Minn.App.2003). "If, on its face and as applied to the facts, a statute's meaning is plain, judicial construction is neither necessary nor proper." *Occhino,* 640 N.W.2d at 359.

■ Minn.Stat. § 340A.702(6) (2002) provides:

It is a gross misdemeanor: ... to sell or otherwise dispose of intoxicating liquor within 1,000 feet of a state hospital, training school, reformatory, prison, or other institution under the supervision and control, in whole or in part, of the commissioner of human services or the commissioner of corrections;

The district court framed the issue as whether the Commissioner of Corrections exercises "supervision and control, in whole or in part," over the Cass County jail. The district court concluded that the licensing, inspection, and regulation powers that the commissioner exercises over county jails constitute "supervision and control," and a plain reading of the statute makes it applicable to county jails.

While we agree with the district court's conclusion that the Department of Corrections, in part, exercises supervision and control over county jails, that conclusion is not dispositive of the issue of the application of the statute to sales within 1,000 feet of a county jail. Whether a county jail is an "other institution" within the meaning of Minn.Stat. § 340A.702(6), must also be determined. Appellant argues that the statute only applies to state institutions but concedes that the words of the statute are ambiguous on this point. We agree.

If the statutory language has more than one reasonable interpretation, it is ambiguous. *Occhino,* 640 N.W.2d at 360. In construing statutes, "words and phrases are construed according to rules of grammar and according to the common and approved usage and general words are construed to be restricted in their meaning by preceding particular words." Minn. Stat. § 645.08(1), (3) (2002). Under the rules of grammar, the adjective "state" could be read to modify only "hospital," or could be read to modify the entire list of institutions that follow, including "other institution." The statute is therefore ambiguous regarding what institutions fall within its ambit.

"[C]ourts resolve ambiguity by looking to legislative intent, agency interpretation, and principles of continuity, which include consistency with laws on the same or similar subjects." *Occhino* at 360 (citing Minn. Stat. § 645.16). Although both parties have speculated about the legislative intent of Minn.Stat. § 340A.702(6), the record does not contain evidence or argument about the legislative history of the statute. Our own research indicates that in 1967,

when the current law was enacted,[1] the legislature simultaneously repealed a similar provision,[2] which provided:

Any person who shall sell or dispose of any intoxicating liquor .... within 1,000 feet of any of the following named state institutions: The St. Peter state hospital for the insane, the Rochester state hospital for the insane, the Fergus Falls state hospital for the insane, the first state asylum for the insane at Anoka, the second state asylum for the insane at Hastings, the state training school at Red Wing, the Minnesota home school for girls at Sauk Center, the state reformatory at St. Cloud, the state prison at Stillwater, the state public school at Owatonna, the state sanatorium for consumptives at Walker, the hospital for crippled and deformed children at St. Paul, and the state hospital for inebriates at Willmar, shall be guilty of a gross misdemeanor....

Minn.Stat. § 624.703 (1965) (repealed 1967). In that statute, as in Minn.Stat. § 340A.702(6), all of the specifically named institutions are state institutions. The change in the wording of the statute appears to have been designed to eliminate the need to separately list each institution and to define in a more generic manner the set of institutions covered by the statute. Retention of the adjective "state" in the new version appears to carry forward what was formerly a clear limitation of the application of the statute to state institutions. And nothing in the wording of section 340A.702(6) expresses an intent to expand the criminalization of the prohibited acts to county institutions. Insofar as we can determine legislative intent and continuity, these factors weigh in favor of appellant's argument that the statute applies only to state institutions.

Regarding agency interpretation and consistency with similar laws, appellant presented evidence to the district court of a letter from the Cass County Attorney declining to interpret section 340A.702(6) as applying to the county jail, and an affidavit attesting to the fact that at least four establishments licensed for on-sale liquor sales are located within 1,000 feet of the Cass County jail despite Minn.Stat. § 340A.412, subd. 4(a)(5) (2002), which prohibits licensing of intoxicating liquor sales "within 1,000 feet of a state hospital, training school, reformatory, prison, or other institution under the supervision or control, in whole or in part, of the commissioner of human services or the commissioner of corrections ..."[3] The record is devoid of evidence of any prosecutions under Minn.Stat. § 340A.702(6), or any denial of licenses to non-municipal establishments under the identical provisions of Minn.Stat. § 340A.412, subd. 4(a)(5), for sales in proximity to a county jail, indicating that neither law has been interpreted by the licensing authority or by county attorneys to apply to county jails. Appellant argues that to embrace respondents' construction of the statute would lead to absurd or unreasonable results, asserting that the state is riddled with liquor establishments located within 1,000 feet of institutions under the partial control of the Commissioner of Human Services or the

---

1. The legislature enacted Minn.Stat. § 340.14, subd. 3, in 1967. In 1985, the provision was moved from section 340.14, subdivision 3, to section 340A.702(6).

2. Minn.Stat. § 645.16(5) (2002) specifically directs us to ascertain the intention of the legislature by considering, among other matters, "the former law, if any, including other laws upon the same or similar subjects."

3. Because municipal liquor stores are established through the provisions of Minn.Stat. § 340A.601, no license is involved in the operation of a municipal liquor store.

Commissioner of Corrections, given the broad licensing authority of those departments. Despite the absence of support in the record for the assertion of the number of existing liquor establishments located within 1,000 feet of county jails, there is sufficient evidence to conclude that in the City of Walker alone the construction of the statute urged by respondents would have significant consequences. And the consequences of a particular interpretation is a factor to be considered by the court in ascertaining the legislative intent.[4]

█ Additionally, construction of the statute to criminalize the conduct of the city makes the city a potential criminal defendant. And "where doubt exists as to legislative intent of a penal statute, doubts must be resolved in favor of the defendant." *State v. Serstock,* 402 N.W.2d 514, 516 (Minn.1987).

### DECISION

Minn.Stat. § 340A.702(6) (2002), is ambiguous regarding whether it applies to sales within 1,000 feet of a county jail, which indisputably is supervised or controlled in part by the Commissioner of Corrections. Applying the principles of statutory construction, we conclude that the statute refers only to sales within 1,000 feet of a state institution, and the statute does not apply to prohibit liquor sales within 1,000 feet of a county jail.

**Reversed.**

---

4. Although not briefed by the parties, a question was raised at oral argument about whether limiting application of the statute to state institutions would violate Minn.Stat. § 645.16 (2002), which requires that every law be construed, if possible, to give effect to all its provisions, because there is no evidence in the record that any state institutions exist that are supervised or controlled only in part by the Commissioner of Human Services or the Commissioner of Corrections. Because the current codification of the statute appears to have been drafted to include new institutions within the intended category as they are created, without having to continually amend the statute to name specific institutions, we do not find this lack of evidence fatal to appellants' argued construction.